IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EMANUEL REDDEN,                    )
                                  )
            Plaintiff,            )
                                  )
                                  )        Civil Action No. 05-241-GMS
      v.                          )
                                  )
CORRECTIONAL OFFICER DIEZ,        )
                                  )
            Defendant.            )


**DEFENDANT'S OPENING BRIEF
IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT**


**DEPARTMENT OF JUSTICE
STATE OF DELAWARE**


*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
      Attorney for Defendant Lauro Diaz

Dated: February 8, 2007

## <u>TABLE OF CONTENTS</u>

Table of Citations ……………………………………………………............     ii

Nature and Stage of the Proceedings ……………………………………………     1

Summary of the Argument ……………………………………………………     2

Statement of the Facts …………………………………………………………...     3

Argument ………………………………………………………………………..     5

      I.    Redden Cannot Support A Claim For Cruel And Unusual Punishment Because He Cannot Prove That Officer Diaz Hit Him And He Cannot Prove That The Force Used, If Any, Was Malicious, Sadistic And Repugnant To The Conscience Of Mankind.     6

      II.   Defendant Is Immune From Liability For Plaintiff's Claims.     14

Conclusion …………………………………………………………………………     17

# TABLE OF CITATIONS

## Cases

*Acosta v. McGrady,*
 1999 WL 158471 (E.D. Pa. March 22, 1999) ……………………………… 8-10

*Anderson v. Creighton,*
 483 U.S. 635 (1987) …………………………………………….......... 15

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) …………………………………………….......... 5

*Barber v. Grow,*
 929 F.Supp. 820 (E.D. Pa.1996) ……………………………………... 8

*Brown v. Vaughn,*
 1992 WL 75008 (E.D. Pa. March 31, 1992) ………………………… 8-9

*Carter v. Exxon Company USA,*
 177 F.3d 197 (3d Cir. 1999) ………………………………………… 5

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986) …………………………………………….... 5

*Colon v. Wert,*
 1997 WL 137172 (E.D. Pa. March 21, 1997) ……………………….. 8

*Davidson v. Dixon,*
 386 F.Supp. 482 (D. Del. 1974) …………………………………… 7

*Doe v. Cates,*
 499 A.2d 1175 (Del. 1985) ………………………………………… 14

*Hafer v. Melo,*
 502 U.S. 21 (1991) ………………………………………………… 15

*Harlow v. Fitzgerald,*
 457 U.S. 800 (1982) …………………………………………….......... 15

*Hudson v. McMillian,*
 503 U.S. 1 (1992) …………………………………………….... 8

*Johnson v. Coventry,*
 2006 WL 176099 (D. Del. Jan. 25, 2006) ………………………….. 9-10

*Reyes v. Chinnici,*
 54 Fed. App. 44 (3d Cir. 2002) …………………………………….. 8

*Robinson v. Link,*
 1994 WL 463400 (E.D. Pa. Aug. 25, 1994) ……………………….. 8

*Seminole Tribe of Florida v. Florida,*
 517 U.S. 44 (1996) ………………………………………………… 14

*Smith v. Mensinger,*
 293 F.3d 641 (3d Cir. 2002) …………………………………….... 12

*Vick v. Haller,*
 512 A.2d 249 (Del. Super. Ct. 1986) ……………………………… 15

*Whitley v. Albers,*
 475 U.S. 312 (Del. 1986) …………………………………….... 8

*Will v. Michigan Dept. of State Police,*
 491 U.S. 58 (1989) …………………………………………….......... 15

*Wilson v. Reinhart,*
     2003 WL 21756393 (D. Del. July 29, 2003) ……………………………….    7-8
*Wilson v. Seiter,*
     501 U.S. 294 (1991) ………………………………………………………...    7

**<u>Statutes, Rules and Other Authority</u>**

10 *Del. C.* § 4001 ……………………………………………………………...    14
42 *U.S.C.* § 1983 …………………………………………………………………    *passim*
Delaware Constitution Article I ………………………………………………….    14
Federal Rule of Civil Procedure 56(c) ………………………………………...    5

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Emanuel Redden ("Redden" or "Plaintiff") is an inmate presently incarcerated at Delaware Correctional Center ("DCC"). At the time of the events alleged in the Complaint, Plaintiff was incarcerated at Sussex Correctional Institute ("SCI"). Redden is appearing *pro se* in this matter with leave to proceed *in forma pauperis*.

On April 25, 2005, Redden filed a Complaint pursuant to 42 U.S.C. § 1983 against Defendant Correctional Officer Lauro Diaz ("Officer Diaz" or "Defendant"). Redden alleges in his Complaint that he is entitled to damages against Officer Diaz because Officer Diaz "struck me on the right side of my neck, intentionally, with his right forearm as he was walking pass [sic] me" (the "Complaint"). (D.I. 2).

Over one year after he filed his Complaint, Redden served Officer Diaz with the summons and Complaint. (See D.I. 8, 9). Officer Diaz filed a timely answer to the Complaint on May 16, 2006 (the "Answer") (D.I. 11). In his Answer, Officer Diaz denied the allegations in Redden's Complaint and denied that Redden was entitled to any relief. (D.I. 11).

On July 26, 2006, this Court issued an amended scheduling order setting January 19, 2007 as the closing date for discovery. (D.I. 16). Further, by the terms of the amended scheduling order, all motions for summary judgment shall be served and filed no later than February 20, 2007. On February 8, 2007, Defendant filed his Motion for Summary Judgment. This is Defendant's Opening Brief in Support of the Motion for Summary Judgment.

## **SUMMARY OF THE ARGUMENT**

I.     Plaintiff cannot support a claim for violation of his Eighth Amendment rights because he cannot prove that Officer Diaz hit him.  Moreover, even if Plaintiff can prove that Officer Diaz hit him, he cannot prove that the alleged hit was intentional and for the very purpose of causing malicious and sadistic harm.  Therefore, Plaintiff cannot prove that Officer Diaz violated his Eighth Amendment rights and the Motion for Summary Judgment should be granted.

II.     Officer Diaz is immune from liability in his official and individual capacities. Thus Plaintiff's claims against him cannot withstand summary judgment and the Motion should be granted.

## STATEMENT OF THE FACTS

On or about September 1, 2004, Correctional Officer Lauro Diaz was working in the medium building at SCI during the 4:00 p.m. to 12:00 a.m. shift. (Exhibit "A" at ¶ 2).[1] Officer Diaz was not normally assigned to the medium building but was working there that day. (*Id.*). As part of his duties at the medium building, Officer Diaz was required to perform time punches on the four tiers of the medium building. (*Id.*).

The procedure for performing a time punch requires one officer to open the gate to the tier while the other officer goes onto the tier and makes the check. The officer at the gate is to watch the officer on the tier for safety reasons. (*Id.* at ¶ 3). Officer Diaz and another officer were responsible for performing the time punches that day and both officers followed procedure. (*Id.* at ¶ 3).

At approximately 10:00 p.m., Officer Diaz and another officer were performing the time punches on the tiers. (*Id.* at ¶ 2-3). At no time during the course of the time punches did any unusual event or incident occur. Therefore, at the conclusion of the time punches, there was nothing for Officer Diaz or the other officer to report. (*Id.* at ¶ 3).

Shortly after he completed the time punches, Officer Diaz left the tier. An inmate, who Officer Diaz did not know but later learned to be Emanuel Redden, then came downstairs and began speaking with the Officer in Charge – Sergeant Barry Biles.

---

[1] There appears to be some discrepancy in the Plaintiff's filings and his grievance regarding the date of the alleged incident. Plaintiff's complaint, filed approximately seven (7) months after the alleged incident, says the incident occurred on August 28, 2004. His grievance, however, states that the alleged incident occurred on September 1, 2004. SCI's records indicate that Officer Diaz was working the 4:00 p.m. to 12:00 a.m. shift in the medium building on September 1, 2004.

(*Id.* at ¶ 4).  During the conversation between Inmate Redden and Sergeant Biles, Officer Diaz overheard Inmate Redden tell Sergeant Biles that Officer Diaz hit him while performing the time punch.  (*Id.* at ¶ 5).

Officer Diaz did not hit Inmate Redden during the time punches he performed that day.  (*Id.* at ¶ 6).  Further, no other inmate saw Officer Diaz hit Inmate Redden (Exhibit "B" - Redden Depo. 18:24 – 19:2) and neither Sergeant Biles nor any other officer filed an incident report claiming that Redden was hit.  In addition, Officer Diaz never received any disciplinary action as a result of Inmate Redden's unfounded accusation.  (Exhibit "A" at ¶ 7).

Initially, Redden was not going to file a grievance regarding the incident. However, after speaking with the prison's Imam, Redden was convinced that he should file a grievance.  (Exhibit "B" – Redden Depo. 34:19 – 35:4).  No where in his grievance does Redden state that he was hurt by the alleged hit.  Rather, Redden states that he was grieving the incident because Officer Diaz "never apologized or acknowledged me." (Exhibit "C").

Approximately one month after the alleged incident Redden filed a sick call slip claiming that he had been "struck in the neck" and "now a knot has grown up on it."  (Exhibit "D").  The nursing staff, in assessing Redden's neck attributed his problem to a hair follicle.  (Exhibit "B" - Redden Depo. 46:18 – 47:11).  The nurse did not prescribe any treatment or medication for Redden's neck.  (*Id.* at 43:20-24).  Redden never filed any other sick call slips regarding his neck.

Over seven (7) months after the alleged incident, Redden filed his Complaint.

## ARGUMENT

Federal Rule 56(c) permits a Court to grant summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court holds that a court must enter summary judgment, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

To obtain summary judgment the moving party must demonstrate that he has met the standards of Rule 56(c). *Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir. 1999). The summary judgment standard requires that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Thus only disputes that affect the outcome of a lawsuit will properly preclude the grant of summary judgment. *Id.*

"At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. In deciding a motion for summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252.

5

I.          **Redden Cannot Support A Claim For Cruel And Unusual Punishment Because He Cannot Prove That Officer Diaz Hit Him And He Cannot Prove That The Force Used, If Any, Was Malicious, Sadistic And Repugnant To The Conscience Of Mankind.**

Redden claims that Officer Diaz should be held liable for violation of his Eighth Amendment rights because Officer Diaz intentionally struck him in the neck. (Complaint at "Statement of Claim").  Redden, however, cannot prove that Officer Diaz hit him.  Moreover, even if Redden can prove that Officer Diaz hit him, the hit, and any alleged resulting injury, were *de minimis* and unintentional, and do not constitute excessive force or cruel and unusual punishment under the Eighth Amendment.

A.          **Redden cannot prove that Officer Diaz hit him.**

In his affidavit, Officer Diaz swears that he did not hit Redden.  (Exhibit "A" at ¶ 6).  Moreover, Redden cannot prove otherwise.  In his deposition, Redden testifies that the area in which he was playing cards on the evening of the alleged incident was dimly lit.  (Exhibit "B" - Redden Depo. 14:8-9).[2]  Therefore it was difficult to see. He also states that he was playing cards at the time of the alleged hit and was intensely focused on the game he was playing.  (*Id.* at 14:10-16; 27:7-15).[3]  Thus Redden had no

---

[2] A (Redden):  "… because I was sitting up at the table like this here because there was a dim light overtop of us."

[3] A (Redden):  So I was sitting up at the table so I could see the cards.  Because these are not reading glasses, you see, these are for the distance.  So I had to really focus on looking at the cards, you know, because I didn't have my glasses on because I can't see with them on.  So there was a dim light there.
So I was focused on playing the cards.
***
But I'm leaning forward on the table because it was a dim light there. There is not bright light there in the evening.  It's a dim light.  And so I had to focus in on the cards so I could see the cards because they was old, you know, like dirty and stuff, you know.  …  So I was so busy focusing on the cards.

idea of what was occurring behind him. Further Redden admits that he never saw Officer Diaz hit him. (*Id.* at 28:4 - 7).[4] Finally Redden states that no one else, not even the people sitting at the table with him, saw Officer Diaz hit him. (*Id.* at 18:24 – 19:2).[5] Thus Redden cannot prove that he was hit in the neck by Officer Diaz. Without proof of the alleged hit, Redden cannot support a claim for excessive force or cruel and unusual punishment and Defendant's Motion for Summary Judgment should be granted.

>    **B.    Redden cannot prove that the alleged hit was intentional and of a sort that is repugnant to the conscience of mankind.**

Assuming, *arguendo*, that Redden is able to prove that Officer Diaz hit him, the one time hit to Redden's neck without any showing of malicious intent to cause harm does not constitute a violation of the Eighth Amendment.

To establish a claim for violation of his Eighth Amendment rights, a plaintiff must prove the existence of an "objective" element – that he was subjected to the unnecessary and wanton infliction of pain – and a "subjective" element – that the defendant had a culpable state of mind at the time of the alleged deprivation. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "A plaintiff can only recover on a § 1983 claim if he can show 'intentional conduct….'" *Wilson v. Reinhart*, 2003 WL 21756393, at *3 (D. Del. July 29, 2003) (quoting *Davidson v. Dixon*, 386 F.Supp. 482, 487 (D. Del. 1974)) (Exhibit "E").

---

[4] Q:    So you didn't actually see his right forearm hit you?
   A:    Well, what happened, like I said, I didn't see it coming.

[5] Q:    Did the other people at the card table see Officer Diaz hit you?
   A:    No.

In evaluating a claim under the Eighth Amendment the Court must consider that not every "malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Moreover, "[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically." *Wilson*, 2003 WL 21756393, at *4 (quoting *Reyes v. Chinnici*, 54 Fed. App. 44, 48 (3d Cir. 2002)).

Several courts in the Third Circuit have found that certain physical altercations between inmates and correctional officers are *de minimis* and not in violation of the Eighth Amendment. *See, e.g.*, *Acosta v. McGrady*, 1999 WL 158471 (E.D. Pa. March 22, 1999) (Exhibit "F") (citing *Barber v. Grow,* 929 F.Supp. 820 (E.D. Pa. 1996) (holding that pulling a chair out from under an inmate, causing him to fall and suffer loose teeth, was not an Eighth Amendment violation); *Colon v. Wert,* 1997 WL 137172 (E.D. Pa. March 21, 1997) (Exhibit "G") (finding that an allegation that a guard slammed a cell door into a prisoner's chest, thereby aggravating pre-existing back and neck injuries, was *de minimis*); *Robinson v. Link,* 1994 WL 463400 (E.D. Pa. Aug. 25, 1994) (Exhibit "H") (holding that allegations that a prisoner was handcuffed, dragged along a corridor, and hit in the back were *de minimis*); *Brown v. Vaughn,* 1992 WL 75008 (E.D. Pa. March 31, 1992) (finding that allegations that a guard struck an inmate in the chest

and spit on him were *de minimis*) (Exhibit "I")).  Thus it is clear that not every unkind touch by an officer on an inmate is a violation of the inmate's Eighth Amendment rights.

In *Johnson v. Coventry*, 2006 WL 176099 (D. Del. Jan. 25, 2006) (Exhibit "J"), the plaintiff, an inmate at a Delaware correctional facility, filed a lawsuit under § 1983 claiming, *inter alia*, that the defendant, a correctional officer, violated his Eighth Amendment rights when he "'forcefully pushed one of the food trays' inside [the plaintiff's] cell, causing the tray to strike [the plaintiff's] leg."  *Johnson*, 2006 WL 176099, at *1.  Plaintiff further alleged that after the hit he and the correctional officer engaged in an exchange of words regarding the plaintiff's pending lawsuit.  Plaintiff claimed he had to seek medical attention for his bruised leg.  *Id.*  In reviewing the plaintiff's complaint pursuant to 42 U.S.C. § 1915, the Court dismissed the allegation of excessive force.  The Court held, "When comparing [the plaintiff's] allegations with the relevant law, it is obvious that the physical contact as alleged was constitutionally *de minimis* and thus does not give rise to an Eighth Amendment violation."  *Id.* at *3.

Similarly, in *Acosta v. McGrady*, 1999 WL 158471 (E.D. Pa. March 22, 1999) (Exhibit "F"), the Eastern District of Pennsylvania granted the defendant's motion for summary judgment as to a claim of excessive force.  In *Acosta*, the plaintiff inmate claimed that he was assaulted by one of the defendant correctional officers who "pulled sharply on his arms, which were handcuffed behind his back, and slammed him into the wall for no reason."  *Acosta*, 1999 WL 158471, at *8.  The defendant, in response, argued that the plaintiff had threatened and assaulted him and that they "scuffled and plaintiff was pressed into the wall."  *Id.*  In reviewing the Eighth Amendment claim the court held that, "plaintiff has offered no evidence whatsoever of defendant's motivation other than

9

alleging that the alleged abuse was done 'wanturly and sadistically' [sic] to inflict 'mental stress and cruelty.'" *Id.* at *9. Thus the court granted defendant's motion for summary judgment "[b]ecause plaintiff has come forward with no evidence of a culpable state of mind on the part of [the] defendant…." *Id.*

Like the plaintiff inmates in *Johnson* and *Acosta*, Redden cannot satisfy the subjective and objective elements of his claim. First, the force Redden claims Officer Diaz used was constitutionally *de minimis*. Redden asserts that Officer Diaz hit him in the neck. But Redden admits that, at first, he believed the hit was an accident. (Exhibit "B" - Redden Depo. 11:23 – 12:2).[6] Redden only began to believe the hit was intentional after he turned around and saw that Officer Diaz supposedly had enough space to walk and after another inmate stated that Officer Diaz is racist. (*Id.* at 26:14-27:4).[7] Redden, however, never complained to Officer Diaz about the hit and never even said so much as an "ouch." (*Id.* at 20:8 - 14).[8] In fact, Redden never states in the grievance that he filed

---

[6] A (Redden): And after he hit me, I looked back to see if he had enough room to get by. Because I thought it was an accident, really, until I looked back and seen he had enough room.

[7] Q: Your complaint states that he hit you intentionally. How do you know he hit you intentionally?
  A: Because as I said before, when he hit me, I was leaning forward at the table concentrating on the cards. I wasn't in his way at all. When he struck me on the right side of my neck with his right forearm, I immediately looked back to see if he had enough room to get by. … That is when I said the officer just struck me and Playboy was just coming down … he was right there where he was making the punch at and he said, yeah, that Officer Diaz. He is like that. He is real racist, you know.

[8] Q: When Officer Diaz hit you, did you say anything like ouch or --
  A: No. It was sort of shocking -- a shocking thing that I went through. Because the blow was powerful. I'm saying it was a shocking blow when somebody hit you. There wasn't no ouch or whatever because I'm not an ouch kind of man because I done took some blows before.

that he was hurt.  Rather he states that he was grieving the incident because Officer Diaz "never apologized or acknowledged me."  (Exhibit "C").  Moreover, Redden admits that it was only after he spoke with the prison's Imam that he decided to file a grievance. (Exhibit "B" - Redden Depo. 34:19 – 35:4).[9]  Thus Redden's own actions indicate that Officer Diaz's alleged hit was not extremely forceful or painful and did not cause harm.

    Second, Redden cannot prove that Officer Diaz acted with a culpable state of mind.  Redden admits that he never had any prior interaction with Officer Diaz.  (*Id.* at 23:13-15).[10]  In fact, Redden did not even know Officer Diaz's name until it was revealed by another inmate.  (*Id.* at 20:3-5).[11]  Further, Officer Diaz never said a word to Redden at any point prior to, during or after the alleged hit.  (*Id.* at 17:15-19).[12]  Finally, Redden admits that he never had any other interactions with Officer Diaz after the hit.  (*Id.* at

---

[9] Q: Now, why did you wait a couple of days after the incident to file the grievance?
 A: Well, actually, I sought advice from Iman, the leader of the Muslims down there. See, I'm not like a type of lawsuit filing guy, whatever, you know, grievance kind of man, if you ever check my record.  I'm not into that.  So I sought the advice of Robert Saunders, who is like the resident attorney and stuff like that, you know, paralegal and stuff like that.  So he told me that I should file a grievance you know.  So that's what I did upon his advice.

[10] Q: Did you have any interactions with Officer Diaz before this incident?
 A: No, ma'am.

[11] Q: And before Playboy told you who Officer Diaz was, you didn't know who Officer Diaz was?
 A: I never seen him before on that block, you know.

[12] Q: Okay.  When Officer Diaz allegedly hit you, did he say anything to you?
 A: He didn't say anything at all.
 Q: Did you say anything to him?
 A: No, ma'am.

23:16-18).[13]  Therefore, there is nothing in the record that indicates that Officer Diaz acted with culpable intent to cause Redden harm.

Redden asserts that Officer Diaz hit him because the officers at SCI were conspiring against him.  (*Id.* at 17:20 – 18:23).  Redden, however, has no proof of a conspiracy nor of Officer Diaz's involvement in a conspiracy.  Thus the circumstances of this case do not reveal that Officer Diaz had any intent to cause harm to Redden.

Finally, it appears from Redden's medical records that he suffered no real injury as a result of the alleged hit.  Although, "*de minimis* injuries do not necessarily establish *de minimis* force," the extent of the injuries suffered is a factor to be considered in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment.  *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002).  In this case Redden did not have any real injuries.  He did not file a sick call slip for his alleged neck injury until almost one month after the alleged hit occurred – indicating that Redden likely suffered no real harm or the neck injury was a result of some other cause.  (Exhibit "D").  Redden claims in his deposition testimony that his neck began to ache approximately one week after the incident and that he reported his neck ache to a nurse.  (Exhibit "B" - Redden Depo. 22:4 – 23; 45:6 – 47:15).  The nurse, however, informed Redden that the pain in his neck was due to a hair follicle.  (Exhibit "B" - Redden Depo.

---

[13] Q:   Did you have any interactions with him [Officer Diaz] after the incident?
  A:   No, ma'am.

46:18 – 47:11).[14]  Moreover, the nurse did not need to render any treatment or prescribe medication for the alleged neck ache.  (*Id.* at 43:20-24).[15]  Thus the records indicate that Redden suffered no serious injury as a result of the alleged hit.

Although the lack of an injury is not entirely indicative of the extent of force used, considering the circumstances in this case, the fact that Redden did not have a serious injury supports Defendant's argument that the type of force exhibited here, if any, was not malicious and sadistic and did not violate Redden's constitutional rights. Therefore, Redden cannot support a claim of violation of his Eighth Amendment rights and the Defendant's Motion for Summary Judgment should be granted.

---

[14] A:   Well, it was a swollen gland and that's what the lady said.  It was due to the hair follicles in my head.  She explained that whenever you have problems with your hair follicles, it makes your gland swell up.  The gland was about right here that was swelling up.  It was about the size of a quarter.  It is just a piece that is still there.  It never went away.
   Q:   So according to the nurse, this wasn't because of Officer Diaz allegedly hitting you, this was because of hair follicles?
   A:   See, I didn't sell [sic] tell her I was struck in the neck first.  I told her my neck was swelled up.  She said, it was in your hair layer.  I said, no, I was struck in the neck.
   Q:   And then what did she say?
   A:   She didn't say anything, really.
   Q:   But according to her, this was from swollen glands from your hair follicles?
   A:   That's what she said, a possibility from that.

[15] Q:   What treatment did you receive for your neck pain?
   A:   She didn't give me no treatment.
   Q:   Were you prescribed any medication for your neck pain?
   A:   No, ma'am.  I don't take medication.

## II.  Officer Diaz Is Immune From Liability For Plaintiff's Claims.

Plaintiff seeks to hold Officer Diaz liable in his official capacity, as well as his individual capacity, for violation of his Eighth Amendment rights. Officer Diaz, however, is immune from such claims.

### A.  Officer Diaz is immune from liability in his official capacity pursuant to the Doctrine of Sovereign Immunity and the Eleventh Amendment.

To the extent that Redden seeks to hold Officer Diaz liable in his official capacity for the alleged tort and/or constitutional violation, Delaware's Doctrine of Sovereign Immunity bars such claims. *See* Del. Const. Art. I., Sec 9; *Doe v. Cates*, 499 A.2d 1175 (Del. 1985). Officer Diaz did not, at any time, act with gross or wanton negligence. He performed his job in the proper manner and did not hit Redden. (Exhibit "A" at ¶ 3, 6). Moreover Officer Diaz's actions of walking down the tier arose out of, and in connection with the performance of a routine tier check – an official discretionary duty. 10 *Del. C.* § 4001. Thus Officer Diaz is immune from liability for Redden's tort and constitutional claims.

Further, to the extent Plaintiff's Complaint names Officer Diaz in his official capacity, Officer Diaz is immune from liability under the Eleventh Amendment. The Eleventh Amendment stands "for the constitutional principle that state sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 64 (1996). The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment, however, only a clear indication of Congress's intent to waive the state's immunity will produce this result. *Id.* No such clear intent can be

found in 42 U.S.C. § 1983. In fact, Congress's intent appears to be to the contrary as the statute facially allows suits only to be brought against persons. 42 U.S.C. § 1983.

A suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21 (1991). Under federal law, Officer Diaz, in his official capacity, is not a "person" for the purposes of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, this Court lacks jurisdiction over Officer Diaz in his official capacity, and he is outside the class of persons subject to liability under 42 U.S.C. § 1983. Therefore summary judgment is appropriate.

### B. Officer Diaz is immune from liability in his individual capacity pursuant to the doctrine of qualified immunity.

Plaintiff also cannot maintain an action against Officer Diaz in his individual capacity pursuant to the doctrine of qualified immunity. Government officials performing discretionary functions are immune from liability for damages, provided that their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established when, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Furthermore, state defendants are entitled to qualified immunity where they acted in good faith, without gross or wanton negligence, in the performance of their discretionary duties. *Vick v. Haller*, 512 A.2d 249 (Del. Super. Ct. 1986) (*aff'd in part and rev'd in part on procedural grounds*).

In this case, Officer Diaz did not hit the Plaintiff. Further to the extent that Redden was hit, the hit was not intentional or malicious and did not cause serious

15

injury.  Thus, Officer Diaz performed his job in good faith and did not violate Redden's rights.

Given that Officer Diaz is immune from liability in his official and individual capacities, Plaintiff cannot maintain this action against him and the Motion for Summary Judgment should be granted.

## <u>CONCLUSION</u>

Officer Diaz did not hit Emanuel Redden.  Moreover, even if Redden was hit, the hit was not intentional and did not cause harm.  Therefore no reasonable jury could find that Redden's Eighth Amendment rights were violated and Defendant's Motion for Summary Judgment should be granted.

# CERTIFICATE OF SERVICE

I, Erika Y. Tross, Esq., hereby certify that on February 8, 2007, I caused a true and correct copy of the attached ***Defendant's Opening Brief In Support Of The Motion For Summary Judgment*** to be served on the following individual in the form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT:**

Inmate Emanuel Redden
SBI #00092507
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

**MANNER OF DELIVERY:**

__One true copy by facsimile transmission to each recipient

✓Two true copies by first class mail, postage prepaid, to each recipient

__Two true copies by Federal Express

__Two true copies by hand delivery to each recipient

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
Delaware Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400