IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMANUEL REDDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-241- GMS |
| | ) |
| CORRECTIONAL OFFICER DIEZ, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM**

## I. INTRODUCTION

The plaintiff, Emanuel Redden ("Redden"), a prisoner incarcerated at the Delaware Correctional Center ("DCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. He appears *pro se* and was granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Redden alleges that his Eighth Amendment rights under the U.S. Constitution were violated by the defendant, Correctional Officer Diaz[1] ("Diaz"), when Diaz engaged in excessive force. (D.I. 2.)

Now before the court is Diaz's motion for summary judgment, Redden's response and Diaz's reply. (D.I. 20, 22, 25.) For the reasons set forth below, the court will grant in part and deny in part Diaz's motion for summary judgment.

## II. BACKGROUND

Redden was housed at the Sussex Correctional Institute ("SCI"). He alleges that while there, on the night of August 28, 2004, as he was playing cards, Diaz walked past Redden and intentionally struck him on the right side of his neck with his right forearm. (D.I. 2.) Redden

---

[1]Incorrectly named by plaintiff as Diez.

immediately reported the incident to Diaz's supervisor, Sergeant Biles ("Biles"). (D.I. 14.)

On September 1, 2004, Redden filed a grievance regarding the incident.[2] (D.I. 19; D.I. 21, Ex. C.) He sought guidance from the leader of the Muslims at SCI prior to filing the grievance. (D.I. 21, Ex. B at 10.) In the grievance Redden complained that he was intentionally struck by Diaz as he walked by, he reported the matter to a Sergeant who told Diaz he wanted to meet with him, but Diaz laughed at the Sergeant and walked by him. (D.I. 21, Ex. C.) Redden asked that assault charges be filed on his behalf against Diaz. (D.I. 21, Ex. C.) The grievance committee unanimously recommended to the warden that the incident be investigated, but noted that Redden's request to file assault charges was beyond the authority of the grievance procedure. (D.I. 21, Ex. C.) The court was not provided with the results of the investigation.

Redden's deposition was taken on January 17, 2007. He testified that on the evening in question he was playing pinochle with inmates nicknamed New York City and Salisbury. The area of the card game was dimly lit. (D.I. 21, Ex. B at 3, 5.) Redden had to "really focus on looking at the cards . . . because [he] didn't have any glasses on because [he] can't see with them on." (D.I. 21, Ex. B at 5.) His glasses are for distance. *Id.*

Redden testified that Diaz took his right elbow and winged Redden "upside" his neck. (D.I. 21, Ex. B at 3, 5.) He further testified that Diaz came from his right side and hit him on the right side of his neck with his right forearm. (D.I. 21, Ex. B at 5.) It was a hard hit. (D.I. 21, Ex. B at 5.) Diaz did not say anything to Redden and Redden did not say anything to Diaz. (D.I.

---

[2]There is a discrepancy regarding the actual date of the occurrence. The complaint and testimony by Redden indicate the incident occurred on August 28, 2004. Redden's grievance indicates that the incident occurred on September 1, 2004, and prison records indicate Diaz was assigned to Redden's housing unit on September 1, 2004. (D.I. 21, Ex. C.)

21, Ex. B at 5.) The other card players did not see Diaz hit Redden. (D.I. 21, Ex. B at 6.) Nor did they say anything to Redden. (D.I. 21, Ex. B at 6.) Redden initially thought the hit was an accident until he looked back and saw that Diaz had enough room to pass by him. (D.I. 21, Ex. B at 4.)

When asked if he actually saw Diaz's right forearm hit him, Redden replied, "I didn't see it coming . . . . It was a hard blow there. So I seen it out of the corner of my eye . . . ." (D.I. 21, Ex. B at 8.) He went on to say, "And when I seen it was the officer because he had a blue shirt on . . . . So I seen it was an officer." (D.I. 21, Ex. B at 8.) Redden did not know who the officer was and when Diaz turned around, inmate Playboy told Redden Diaz's name. (D.I. 21, Ex. B at 6, 8.) There were no officers present at the time of the alleged occurrence. (D.I. 21, Ex. B at 4.) Redden testified that Diaz turned around and went out, and he followed Diaz to a gate being unlocked by Biles. (D.I. 21, Ex. B at 4.) Redden immediately complained to Biles that Diaz had assaulted him. (D.I. 21, Ex. B at 3.)

Redden testified that he went to sick call every day so he did not have to submit a sick call slip. (D.I. 21, Ex. B at 7, 12.) He thinks he complained about his neck a couple of days later, probably around September 4th, because his neck did not start bothering him until about two or three days later. (D.I. 21, Ex. B at 7, 12.) Redden testified that the pain in his neck lasted three days at the most, before the swelling went down. (D.I. 21, Ex. B at 12.) He also testified that he might have had a week of aching. (D.I. 21, Ex. B at 7.)

When asked if he suffered any injury as a result of the alleged hit, Redden responded "not immediately at that time or whatever." (D.I. 21, Ex. B at 7.) Redden submitted a sick call slip for his neck on September 27, 2004, approximately one month after the incident. (D.I. 21, Ex. B

at 12.) At that time he complained that he had been struck in the neck, and a knot had grown on his neck. (D.I. 21, Ex. B at 12.) Redden's neck was swollen, and he told a nurse that he neck was bothering him because an officer had hit him. (D.I. 21, Ex. B at 7.) The nurse told Redden that hair follicles in his head were making his glands swell. (D.I. 21, Ex. B at 7, 12.) Redden did not take any medication or receive any treatment for his neck. (D.I. 21, Ex. B at 12.)

Diaz avers that on or about September 1, 2004, he was assigned to the medium building at SCI, and at approximately 10:00 p.m. he was performing time punches along with another officer. (D.I. 21, Ex. A ¶¶ 2, 3.) He followed the normal procedure, there were no unusual events or incidents, and there was nothing to report. *Id.* at ¶ 3. Diaz avers that sometime after the time punch checks were complete, he heard Redden tell Biles that he had hit Redden while he was performing the time punch. *Id.* at ¶¶ 4, 5. Diaz avers that he did not know Redden and he did not hit Redden while performing time punches on the tier. *Id.* at ¶ 4, 6. Diaz has never received any disciplinary action for allegedly hitting Redden. *Id.* at 7.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005). Thus, summary judgment is appropriate only if the party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit. *Id.* at 247-48. An issue is genuine if a reasonable jury could possibly find in favor of

the non-moving party with regard to that issue. *Id.* at 249. The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the evidence is to be viewed in the light most favorable to the nonmoving party, with all doubts resolved against entry of summary judgment. *Blackburn v. United Parcel Serv.*, 179 F.3d 81, 91 (3d Cir. 1999).

The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

## IV. DISCUSSION

### A. Excessive Force

Diaz argues that summary judgment is appropriate for two reasons: Redden cannot prove that Diaz hit him, and Redden cannot prove that the alleged hit was intentional and of a sort that is repugnant to the conscience of mankind. Redden responds that summary judgment is inappropriate because, among other reasons, Diaz was the only officer on the tier at the time he was punched and his grievance was upheld by the grievance committee.

A convicted prisoner's Eighth Amendment right to be free from cruel and unusual punishment is implicated when a prison official uses force against the prisoner. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Determining whether a prison official's use of force violates the Eighth Amendment requires a two-step analysis. First, the court must determine whether the

force "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm" (the "subjective" component). *Hudson v. McMillian,* 503 U.S. 1, 6-7 (1992) (citing *Whitley,* 475 U.S. at 320-21). Second, the court must determine whether the prison official's conduct was sufficiently serious to violate "contemporary standards of decency" (the "objective" component). *Id.* at 8.

In determining whether force was used in good faith or sadistically or maliciously with intent to harm the prisoner, a court must consider several factors, including: the need for the use of force; the relationship between that need and the amount of force used; the extent of the prisoner's injuries; the extent of the perceived threat that the prisoner posed; and any efforts made by the prison officials to lessen the severity of the response. *Hudson,* 503 U.S. at 7; *Brooks v. Kyler,* 204 F.3d 102, 106 (3d Cir. 2000).

The facts construed in the light most favorable to Redden, the non-moving party, are that while playing cards Diaz hit him for no apparent reason, and when confronted by his superior Diaz laughed about the matter. Diaz denies hitting Redden, and he argues that Redden cannot prove that he hit him. Testimony provided by Redden indicates that almost immediately after being hit, he saw an officer in a blue shirt, asked an inmate who it was, and the inmate identified the officer as Diaz. Redden further testified that he followed Diaz and complained to Biles that Redden hit him for no reason. Diaz's affidavit makes it clear he was in the area; Diaz stated he heard Redden tell Biles that he had hit Redden. The facts before the court are sufficient to defeat summary judgment on the issue that Redden cannot prove Diaz hit him.[3]

---

[3]There was an investigation into the matter. Interestingly, the results of the investigation were not produced by Diaz and, it appears, have not been provided to Redden.

Diaz also argues that, assuming Redden can prove he was hit by Diaz, the one time hit to Redden's neck without any showing of malicious intent to cause harm did not violate Redden's constitutional rights. Accordingly, he contends that Redden cannot satisfy the subjective and objective elements of his claim. The subjective component requires that the state actor possess a particular state of mind because only the "unnecessary and wanton infliction of pain" implicates the Eighth Amendment. *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *see also Estelle v. Gamble,* 429 U.S. 97 (1976). The objective component requires that "the deprivation [be] sufficiently serious." *Wilson*, 501 U.S. at 298.

The subjective element of an excessive force claim, turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7. Diaz argues that the force used was constitutionally *de minimis.* He points to Redden's testimony that initially he thought the hit was an accident, and that Redden did not complain to Diaz or say ouch, and his grievance complained that Diaz did not apologize to him. Diaz omits Redden's testimony that he was hit hard, had pain, and complained immediately to Biles that Diaz hit him. Further, Diaz fails to mention that in his grievance Redden asked that assault charges be filed against Diaz. Finally, even if the force used was *de minimus,* "there is no constitutional violation for '*de minimus* uses of physical force, provided the use of force is not of a sort repugnant to the conscience of mankind.'" *Brooks*, 204 F.3d at 107 (citation omitted). The court cannot say that an unprovoked and unwarranted hit is "not repugnant to the conscience of mankind."

Indeed, the evidence before the court is that the use of force was entirely unprovoked and unwarranted. Redden sat playing cards with his fellow inmates and was struck, hard, from

behind for no apparent reason. Viewed as such, Diaz's actions did not serve any valid penological purpose. "Where no legitimate penological purpose can be inferred from a prison employee's alleged conduct . . . , the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm." *DeSpain v. Uphoff,* 264 F.3d 965, 978 (10th Cir. 2001) (quotations omitted); *see also Purkey v. Green*, 28 Fed. Appx. 736, 744 (10th Cir. 2001) (where prison guard's attack on inmate was unprovoked and unnecessary, that gave rise to an inference that it was maliciously and sadistically intended to cause harm). Therefore, in considering the evidence in the light most favorable to Redden, the court concludes he has adduced sufficient evidence of Diaz's mental state. *See Jolly v. Cook*, C.A. No. 99-73-JJF, 2001 WL 34368382 (D. Del. Mar. 22, 2001) (summary judgment denied on subjective component when prisoner was cleared of acting disorderly and threatening, and correction officer's affidavit supported the conclusion that prisoner was not uncooperative); *Davis v. Costello*, C.A. No. 94-415-SLR, 1998 WL 661534 (D. Del. Aug. 5, 1998) (prisoner proved his Eighth Amendment claim, even though the prisoner had kicked and physically resisted prison officials' efforts to transport him, when one of the prison officials repeatedly banged the prisoner's head against a plexi-glass window); *Evans v. Hennessy,* 934 F.Supp. 127, 133 (D. Del. 1996) (prisoner proved that a prison official maliciously intended to cause harm by striking the prisoner, even though the prisoner was being verbally abusive and waiving his hands, because the prisoner never became "physically abusive").

Diaz further argues that Redden suffered no real harm as a result of the alleged hit and points to the fact that Redden did not submit a sick call slip until a month after the hit. However, a prisoner need not suffer any "significant injury" to sustain an Eighth Amendment claim,

although the extent of a prisoner's injuries is relevant to the determination of whether the force used was excessive. *Hudson,* 503 U.S. at 9. Redden testified he was in sick call every day and did not need to file a sick call slip. He testified that the pain began a few days after the hit and that is when he filed his grievance against Diaz. Redden also testified that when his neck became swollen he was seen by a nurse who told him the swelling was probably from hair follicles. Nonetheless, Redden complained of pain as a result of being hit and the court must construe the evidence in the light most favorable to him. Accordingly, the court will deny Diaz's motion for summary judgment under the circumstances. *See Brooks,* 204 F.3d at 108.

As discussed above, in the context of a prison official's use of force, a prisoner need not suffer any "significant injury" to sustain an Eighth Amendment claim. *Hudson,* 503 U.S. at 9. Rather, any time a prison official uses force in an attempt to maliciously and sadistically inflict injury on a prisoner, contemporary standards of decency are violated. *Id.* Hence, "if a prison official acts with a sufficiently culpable state of mind in using force, the objective prong of the Eighth Amendment is necessarily satisfied." *Jolly v. Cook*, C.A. No. 99-73-JJF, 2001 WL 34368382 (D. Del. Mar. 22, 2001); *see Wright v. May,* C.A. No. 96-47-LON (D. Del. Mar. 19, 1998). *See also Perez v. Jackson,* 2000 WL 893445, at *1 (E.D. Pa. June 30, 2000) (regardless of the lack of physical injuries, contemporary standards of decency are always violated when prison officials maliciously and sadistically seek to inflict harm). Diaz contends that courts have concluded that the use of *de minimus* force by a prison official is generally not actionable under the Eighth Amendment. *Hudson,* 503 U.S. at 9-10; *Brooks,* 204 F.3d at 107. However, Redden testified Diaz hit him "hard." This evidence supports a finding that Diaz used more than *de minimus* force, and therefore, the objective component of Plaintiff's Eighth Amendment claim is satisfied.

Accordingly, the Court finds that, in concluding above that Redden has adduced sufficient evidence that Diaz acted maliciously and sadistically with the intent to harm, Redden necessarily satisfies the objective component of Eighth Amendment analysis. Based upon the foregoing, the court concludes that Redden has adduced sufficient evidence to defeat Diaz's motion for summary judgment on the excessive force issue.

### B. Immunity

#### 1. Eleventh Amendment Immunity

Diaz moves for summary judgment on Redden's claims for monetary damages against hin in his official capacity. The Eleventh Amendment bars suits against states, *see Bolden v. SEPTA*, 953 F.2d 807, 813 (3d Cir. 1991), and claims made against state officials in their official capacities are treated as claims made against the state itself. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989). A state, however, may waive its immunity under the Eleventh Amendment. Such waiver must be in the form of an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Department of Corr.*, 749 F.Supp. 572, 578 (D. Del. 1990) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)). The State of Delaware has not consented to Redden's suit or waived its immunity under the Eleventh Amendment. Therefore, to the extent Redden raises claims for monetary damages against Diaz, in his official capacity, he is entitled to summary judgment as said claims are barred by the Eleventh Amendment.

#### 2. Qualified Immunity

Diaz argues that he is entitled to qualified immunity. He contends that he did not hit Redden, and in the alternative, to the extent Redden was hit, said conduct was not intentional or

malicious and did not cause serious harm. Diaz concludes he performed his job in good faith and did not violate Redden's constitutional rights.

Government officials performing discretionary functions are generally entitled to qualified immunity. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quotation and citation omitted). It is "an immunity from suit rather than a mere defense to liability." *Id.* (quotation and citation omitted). Diaz, as a government official has the burden of establishing that he is entitled to such immunity. *See Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004).

A two-step test is used to determine if Diaz is entitled to qualified immunity. First, the court must examine whether or not the alleged conduct, taken in the light most favorable to plaintiff, violated a constitutional right. *Saucier*, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If the allegations amount to the violation of a constitutional right, the court must proceed to the second inquiry and determine if the right was "clearly established in the specific context of the case." *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 202 (noting that an officer is entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

With regard to the first prong, it is undisputed that plaintiff possessed a clearly established right to be free from the use of excessive force. *See Hudson v. McMillion*, 503 U.S. 1 (1992). The second prong requires that the court determine whether Diaz's actions were objectively

reasonable. Here, Redden sustained, what appears to be a relatively minor injury, from an allegedly unprovoked attack. There remains a genuine issue of material fact, however, as to whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm or, indeed, whether Diaz was the perpetrator of the attack. The court thus concludes that a determination of the reasonableness of Diaz's actions is more appropriately in the province of the jury. Accordingly, the court will deny Diaz's motion for summary judgment on the issue of qualified immunity.

## VI. CONCLUSION

For the above stated reasons the court will grant in part and deny in part Diaz's defendant's motion for summary judgment. (D.I. 20). An appropriate order will be entered.

_____
UNITED STATES DISTRICT JUDGE

September 16, 2007
Wilmington, Delaware



FILED

SEP 26 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMANUEL REDDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-241 GMS |
| | ) |
| CORRECTIONAL OFFICER DIEZ, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

At Wilmington this 26th day of September, 2007, for the reasons set forth in the Memorandum issued this date, Correctional Officer Diez's motion for summary judgment (D.I. 20) is granted in part and denied in part as follows:

1. The motion for summary judgment on the use of excessive force in violation of the Eighth Amendment is **denied**.

2. The motion for summary judgment on the issue of Eleventh Amendment immunity is **granted**.

3. The motion for summary judgment on the issue of qualified immunity is **denied**.

/s/ _____
UNITED STATES DISTRICT JUDGE

FILED

SEP 26 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE